# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

LARRY ROBERT WICKS,

                            Plaintiff,

      v.                                    5:15-CV-937
                                                 (LEK/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

---

HOWARD D. OLINSKY, ESQ., for Plaintiff
DAVID L. BROWN & LORIE E. LUPKIN, Special Asst. U.S. Attorneys for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

    This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

    Plaintiff protectively filed an application for Supplemental Security Income ("SSI") Benefits on January 25, 2010, alleging disability beginning January 1, 2000. (Administrative Transcript ("T") at 15, 113, 345). The application was denied initially on May 4, 2010. (T. 98-109). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 9, 2011. (T. 74-97). On August 18, 2011, ALJ Scott M. Staller found plaintiff was not disabled. (T. 110-126). The Appeals Council vacated ALJ Staller's decision on June 17, 2013, and remanded the case for a supplemental hearing and a redetermination of disability. (T. 127-29).

On February 21, 2014, ALJ Edward I. Pitts held a supplemental hearing at which plaintiff and vocational expert ("VE") David Sypher testified. (T. 32-73). On April 16, 2014, ALJ Pitts issued a decision finding that plaintiff was not disabled from the application date through the date of the decision. (T. 12-30). ALJ Pitts's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on June 18, 2015.[1] (T. 1-5).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

---

[1] As this court is only reviewing the April 16, 2014 determination, all subsequent references to the "ALJ" refer solely to ALJ Pitts.

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920. The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin,*

*Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence

is "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more

than a scintilla" of evidence scattered throughout the administrative record. *Id.*

However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

As of the date of the supplemental administrative hearing on February 21, 2014, plaintiff was 61 years old.  (T. 345).  He completed the tenth grade in regular education classes, and subsequently obtained a general equivalency diploma while in the military.  (T. 79, 559).  He was divorced, with an adult son and adult stepdaughter. (T. 55, 535,

589). At the time of the hearing, he resided with his elderly mother and assisted in her care. (T. 55). Plaintiff's previous employment included work as a golf course employee, garbage collector, and warehouse laborer. (T. 352). His most recent employment was as a temporary construction laborer, whose responsibilities included directing traffic, checking off deliveries, and answering the telephone. (T. 40-43, 65). Plaintiff left this position in 2000. (T. 554, 559).

In 1995, plaintiff suffered injuries to his right wrist and shoulder in a workplace accident. (T. 37). While plaintiff was recuperating at home, he was cut by broken glass while cleaning a window, and required reconstructive surgery to repair severed tendons and muscles in his right hand. (T. 45, 554). Since those injuries, plaintiff had reported spasms and throbbing pain in his right hand, and painful tightness in his shoulder that increased with movement. (T. 554). Plaintiff had not been prescribed any assistive devices, but began using a walking stick after several falls.

Plaintiff had never been hospitalized for psychiatric symptoms, but had been treated for depression, anxiety, and anger issues on an outpatient basis. (T. 59-61). His reported symptoms included panic attacks, disorientation, memory deficits, and problems with attention and concentration. (T. 560). Plaintiff also had a history of substance abuse that dated back to the 1960s, and had participated in several outpatient rehabilitation programs. (T. 477-553, 560-61, 578-609). Plaintiff testified that he had been clean and sober for over eighteen years, but, began to abuse alcohol and drugs again after his injuries in 1995. (T. 52). Plaintiff believed that this relapse was connected to his physicians' over-reliance on pain medication. (T. 46, 52). He testified

that this experience, as well as the overdose deaths of several close friends, led him to avoid medical treatment whenever possible[2] because "[t]hey don't know what the hell they're doing." (T. 45-46). At the February 21, 2014 hearing, plaintiff testified that he still attended Alcoholics Anonymous and Narcotics Anonymous meetings on a regular basis, and he had been sober for over two years. (T. 52-53).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 15-18). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   THE ALJ'S DECISION

As an initial matter, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the application date of January 25, 2010. (T. 17). The ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: depression and polysubstance abuse. (T. 17-18). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 18-20).

The ALJ found at step four of the analysis that plaintiff had the RFC to perform unskilled work at all exertional levels. (T. 20-22). The ALJ noted plaintiff's testimony

---

[2] For example, plaintiff had been prescribed medication for high blood pressure, but testified that he had stopped using it. (T. 81). He had also refused medical treatment after a 2008 heart attack. (T. 554).

that he had not abused drugs or alcohol since 2011, and found that plaintiff would still be limited to unskilled work when his polysubstance abuse was under control. (T. 20). In making the RFC determination, the ALJ stated that he considered all of the plaintiff's symptoms, and considered the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 416.929" and Social Security Rulings ("SSRs") 96-4p and 96-7p. (T. 26-27). Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. § 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (T. 20).

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible in light of the record evidence. (T. 21-22). The ALJ next determined that plaintiff had no past relevant work. (T. 22). Although a VE testified at plaintiff's hearing, the ALJ found that reliance on the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2 and SSR 85-15 was appropriate because plaintiff's non-exertional limitations had little or no impact on the occupational base. (T. 23). Applying the framework of the Guidelines and SSR 85-15, the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform.[3] (T. 22-24). Accordingly, the ALJ determined that plaintiff was not

---

[3] The ALJ noted that one of his hypothetical questions to the VE accepted all of plaintiff's allegations as true, and described physical limitations more restrictive than the final RFC. (T. 23). The VE testified that this hypothetical individual would be able to perform representative

disabled from his application date, January 25, 2010, through the date of the decision. (T. 24).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    The ALJ's RFC assessment was not supported by substantial evidence. (Pl.'s Br. at 15-18) (Dkt. No. 11).

2    The ALJ's credibility finding was not supported by substantial evidence. (Pl.'s Br. at 13-15).

3.    The ALJ's step five determination was not supported by substantial evidence. (Pl.'s Br. at 10-13).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 6-17) (Dkt. No. 17). For the following reasons, this court agrees with the defendant and will recommend dismissing the complaint.

## DISCUSSION

## VI.    RFC EVALUATION/TREATING PHYSICIAN

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work

---

occupations including gate guard, surveillance system monitor, telephone solicitor, and school bus monitor. (T. 69-70). The ALJ included this summary of the VE testimony "merely to show that a finding of 'not disabled' would still be directed even if [plaintiff's] testimony were taken as true." (T. 23).

activities in an ordinary work setting on a regular and continuing basis. . . .” A “regular and continuing basis” means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff’s subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff’s capacities. *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ’s conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling (“SSR”) 96-8p, 1996 WL 374184, at *7).

### B. Application

#### 1. Physical Limitations

Plaintiff contends that the ALJ did not properly account for the functional

limitations imposed by his right arm injury, and thus erred in finding that plaintiff was capable of performing work at all exertional levels. (Pl.'s Br. at 15-16). This court disagrees, and concludes that the ALJ's RFC assessment of plaintiff's physical impairments was supported by substantial evidence.

In reaching his RFC determination regarding plaintiff's physical limitations, the ALJ gave "great weight" to the opinion of Dr. Kalyani Ganesh, who performed a consultative examination of plaintiff on April 23, 2010. (T. 20, 554-57). Based on that examination, Dr. Ganesh opined that plaintiff had no gross physical limitations for sitting, standing, walking, or the use of his upper extremities. (T. 557). The ALJ concluded that this opinion was uncontroverted and was consistent with the record evidence as a whole. (T. 21-22).

During the consultative examination, Dr. Ganesh questioned plaintiff about his medical history. (T. 554-55). Plaintiff described the 1995 incident when he severely injured the tendons, ligaments, nodes and arteries in his right hand. (T. 554). Plaintiff had reconstructive surgery to repair the damage, but reported that he still had spasms and an itching, throbbing pain in his right hand. (*Id*.) He also reported right shoulder tightness, and pain throughout his right arm. (*Id*.). Plaintiff reported that this pain, which increased with movement, ultimately caused him to stop working in 2000. (*Id*.) . He was still able to take care of his personal needs on a daily basis, including cooking, cleaning, showering, and dressing himself. (T. 555).

During the examination, Dr. Ganesh observed that plaintiff appeared to be in no acute distress, and he had a normal gait and stance. (T. 555). Plaintiff did not require

any assistive devices, did not need help changing for the examination or getting on and off the examination table, and could rise from a chair without difficulty. (*Id.*). Plaintiff stated that he could not walk on heels and toes, and that he could not squat. (*Id.*) Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*). His lumber spine showed some impairment, with flexion 60 degrees, extension 10 degrees, and lateral flexion and rotation 10 degrees. (T. 556). Plaintiff had full range of motion in the shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. (*Id.*). Dr. Ganesh found full strength in the upper and lower extremities. (*Id.*). Plaintiff's hand and finger dexterity were intact, and he showed full grip strength bilaterally. (*Id.*). Plaintiff's heart was in regular rhythm, and Dr. Ganesh found no problems with his chest and lungs. (*Id.*).

The only other opinion evidence regarding plaintiff's physical impairments was provided by Robert Rix, a licensed clinical social worker ("LCSW") who counseled plaintiff in connection with his substance abuse treatment. (T. 602-605). LCSW Rix opined that plaintiff's severe pain was a significant factor in plaintiff's inability to meet competitive standards in a variety of areas, including accepting instructions and responding to criticism from supervisors. (T. 603). The ALJ assigned no weight to this opinion, because Mr. Rix's opinion was unsupported by any supporting narrative or clinical findings, and the assessment of plaintiff's physical abilities was outside the scope of Mr. Rix's professional qualifications. (T. 22, 603).

The ALJ noted that plaintiff's medical record was limited, particularly after 2010, due to his stated distrust of physicians. (T. 21). However, the available records

supported the ALJ's conclusion that plaintiff did not have any documented physical limitations. Treatment records from February 2010 to June 2010 reference "aches and pains," but document good range of motion and full strength in plaintiff's right shoulder. (T. 637-41). Plaintiff's high blood pressure appeared to be controlled by medication in May and June 2010.[4] (T. 18, 637, 639-40). Plaintiff had not received any treatment for his reported heart problems, and an August 2010 echocardiogram and stress test showed normal results. (T. 610-17). An April 27, 2010 x-ray of plaintiff's right shoulder was negative, and showed no evidence of an acute fracture, dislocation or destructive bony lesion. (T. 558). Dr. Lawrence Leibman, who reviewed the x-ray, described plaintiff's joint spaces as "relatively well maintained." (*Id*.). Similarly, a June 30, 2010 radiology report by Dr. Lexsee Nixson noted some arthritic change in plaintiff's right shoulder, but no other abnormality. (T. 636).

Plaintiff contends that the ALJ erred in his statement that plaintiff "had no treatment for his shoulder or right hand," because the record indicates that plaintiff was prescribed Naproxen and Flexirel for shoulder pain on June 30, 2010, following an appointment at the Syracuse Community Health Center ("SCHC"). (T. 637). However, there are no SCHC records after this appointment, so it is unclear if plaintiff followed through with the prescribed treatment. At his February 2014 hearing, plaintiff testified that he stopped going to SCHC when he "realized that [he] was having more reactions to the meds this guy was giving me . . . than what was really for my best interest." (T.

---

[4] At his June 9, 2011 hearing, plaintiff testified that his high blood pressure was controlled by medication, but that he had stopped taking it because of a distrust of pharmaceuticals. (T. 81-82).

49). To the extent that the ALJ overlooked a brief period in 2010 when plaintiff was prescribed pain medication for his shoulder, this court concludes that the error was harmless, in light of the remainder of the medical evidence that supported the ALJ's conclusions.

The ALJ's analysis of plaintiff's physical limitations was also supported by plaintiff's activities of daily living. Plaintiff testified in February 2014 that he was able to do a variety of tasks, including house cleaning, lawn mowing, and snow blowing. (T. 56). Plaintiff also supplemented the care that home health aides provided for his elderly mother, by making her meals and helping her in and out of bed. (T. 57). Because the ALJ adequately explained his rationale for concluding that there were no physical limitations that would impact plaintiff's ability to function in the workplace, this court concludes that the ALJ's physical RFC determination was supported by substantial evidence.

## 2. Mental Limitations

As noted above, the ALJ limited plaintiff to unskilled work due to his diagnosed depression and history of substance abuse. (T. 20). Plaintiff argues that the ALJ did not properly weigh the medical evidence regarding plaintiff's mental impairments. (Pl.'s Br. at 11). This court disagrees, and concludes that the ALJ's assessment of plaintiff's mental impairments was supported by substantial evidence.

In reaching the mental RFC determination, the ALJ gave great weight to consultative psychiatric examiner Dr. Jeanne Shapiro's April 8, 2010 opinion, namely: that plaintiff was capable of following and understanding simple instructions and

directions; that plaintiff was capable of performing simple and some complex tasks with supervision and independently; that plaintiff appeared capable of maintaining attention and concentration for tasks; that plaintiff could regularly attend to a routine and maintain a schedule; that plaintiff appeared capable of learning new tasks and making appropriate decisions; that plaintiff was able to relate to and interact moderately well with others; and that plaintiff could deal appropriately with some stress. (T. 21, 562). Dr. Shapiro opined that plaintiff's psychiatric symptoms may interfere with his functioning at times, but that he was able to manage his personal affairs independently on a daily basis, and provide at-home care for his elderly mother. (T. 562).

The ALJ found that Dr. Shapiro's conclusions were well-supported by her examination findings. (T. 21). During the consultative examination, plaintiff's demeanor and responsiveness to questions was cooperative, and Dr. Shapiro described his manner of relating, social skills, and overall presentation as "adequate." (T. 561). Plaintiff made appropriate eye contact, had fluent speech, and demonstrated coherent and goal-directed thinking. (*Id*.). He had a calm mood and appeared relaxed and comfortable. (*Id*.). His attention and concentration were intact, and plaintiff successfully completed counting exercises, simple calculations, and serial 3s. (T. 561-62). Plaintiff was also able to recall a list of objects after two minutes, and could recite a series of five digits forward and four digits backward, leading Dr. Shapiro to conclude that plaintiff's recent and remote memory skills were intact. (T. 562). Overall, Dr. Shapiro estimated plaintiff's intellectual functioning to be in the average range. (*Id*.).

Plaintiff informed Dr. Shapiro that he was able to dress, bathe, and groom

himself. (*Id.*). He could cook and prepare food, perform general cleaning, do laundry, shop, manage money, and use public transportation. (*Id.*). Plaintiff described his typical day as spent doing chores, caring for his mother, going to group meetings and appointments, preparing meals, taking walks, and watching television. (*Id.*).

In considering plaintiff's mental limitations, the ALJ assigned no weight to the opinions of three counselors who worked with plaintiff during his substance abuse rehabilitation: Counselor Shannon Flatt, Licensed Mental Health Counselor ("LMHC") Bonnie Merkel, and LCSW Robert Rix. (T. 22). The June 8, 2011 Medical Source Statement signed by Ms. Flatt and LMHC Merkel included the opinion that plaintiff's anxiety, hostility, and aggressiveness towards others left him with "no useful ability to function" in several areas: performing at a consistent pace; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and dealing with normal work stress. (T. 599). Ms. Flatt and LMHC Merkel also opined that plaintiff was "unable to meet competitive standards" in other areas: responding appropriately to changes in a routine work setting; interacting appropriately with the general public; maintaining socially appropriate behavior; and using public transportation. (T. 599-600).

LCSW Rix's June 13, 2011 Medical Source Statement was slightly less restrictive, but still found that plaintiff was "unable to meet competitive standards" in several areas, including: remembering work-like procedures; maintaining attention; maintaining regular attendance; working in coordination with or proximity to others

without being distracted; completing a normal workday and workweek without interruption from psychologically based symptoms; accepting instructions and responding appropriately to criticism from supervisors; and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (T. 603-604).

The ALJ found that these check-box forms from non-acceptable medical sources were not supported by any mental health status examinations or clinical findings. (T. 22). *See Halloran v. Barnhart*, 362 F.3d 28, 31 n.2 (2nd Cir. 2004) (noting the "limited value of the standardized check-box forms, which are considered only marginally useful for purposes of creating a reviewable factual record."). In addition, the ALJ found that several of the counselors' conclusions were directly contradicted by the record. (T. 22). For example, Ms. Flatt and LMHC Merkel opined that plaintiff could not use public transportation, but plaintiff stated several times that he used the bus without issue, including a trip of approximately twenty miles to his consultative examinations. (T. 22, 363, 559). Similarly, the opinion of all three counselors that plaintiff had significant limitations in social interaction was contrary to numerous treatment and examination reports that described plaintiff as cooperative and responsive, and as an active and attentive participant in group counseling sessions. (T. 22, 544-45, 548, 550, 561).

Plaintiff points out that a November 18, 2009 intake report from a substance abuse treatment program described him as demonstrating a guarded attitude, agitated behavior, an angry and irritated mood, a preoccupation with rationalizing his actions,

and poor insight and judgment. (T. 502). The same report states that plaintiff suffered from depression "every now and then" and recommended monitoring to determine whether a psychiatric evaluation was needed. (T. 507). However, plaintiff has not demonstrated any connection between the intake evaluation, which only raised the possibility that further psychiatric evaluation was warranted, and the restrictive functional limitations described by plaintiff's counselors. (T. 507, 599-600, 602-603). Moreover, as previously noted, the ALJ was not required to explicitly reconcile every shred of medical evidence in her RFC analysis. *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).

Plaintiff also notes that the first ALJ to consider plaintiff's application made a more restrictive RFC determination, particularly with regard to the limitations imposed by plaintiff's right arm impairment and reported difficulties in social functioning. (T. 119). These discrepancies between the two ALJ's findings do not impact the court's analysis. Because of the deference afforded by the substantial evidence standard, two ALJs may come to different conclusions based upon the same evidence as long as the ultimate conclusions are supported by substantial evidence. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012) (citing *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966)).

At best, plaintiff's complaints regarding the RFC are premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about plaintiff's physical and mental impairments. As stated above, it is the province of the ALJ to resolve such conflicts in the evidence. *Galiotti*, 266 F. App'x at 67. In addition, the

report of consultative examiners, such as Dr. Ganesh and Dr. Shapiro, may serve as substantial evidence upon which the ALJ may base his decision. *Herb v. Colvin*, No. 14-CV-156, 2015 WL 2194513, at *5 (W.D.N.Y. May 6, 2015) (citing *Finney ex rel. B.R. v. Colvin*, No. 13-CV–543A, 2014 WL 3866452, at *7 (W.D.N.Y. Aug. 6, 2014) (Rep't-Rec.)); *Simmons v. Comm'r of Soc. Sec.*, No. 13-CV-5504, 2015 WL 2182977, at *16 (S.D.N.Y. May 8, 2015) (citing *Mongeur*, 722 F.2d at 1039). Therefore, the ALJ's determination that plaintiff could perform unskilled work at all exertional levels was supported by substantial evidence.

## VII. CREDIBILITY

### A. Legal Standards

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 416.929(a). Second, if the

medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to function. 20 C.F.R. § 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3).

### B.    Application

The ALJ found that plaintiff's testimony regarding the intensity, persistence, and limiting effects of his impairments was not entirely credible. (T. 21-22). Plaintiff argues that the ALJ failed to support this credibility determination with substantial evidence by failing to adequately consider the seven factors listed above. (Pl.'s Br. at 13-15). This court disagrees.

The ALJ began his credibility analysis by noting that plaintiff had not worked at the substantial gainful activity level since 1999, which led the ALJ to conclude that plaintiff had "little or no attachment to the labor force." (T. 21). Plaintiff contends that

the ALJ failed to describe plaintiff's fairly consistent work history prior to 1999. (Pl.'s Br. at 13-14). This argument does not impact the factual accuracy of the ALJ's finding regarding the eleven years prior to his application, or its validity as part of the credibility assessment. *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir.1998) (explaining that work history is "one of many factors that the ALJ is instructed to consider in weighing the credibility of claimant testimony"). Plaintiff also argues that the ALJ ignored plaintiff's testimony that his severe hand and shoulder injuries prevented him from working. (T. 37-38). This argument is likewise unpersuasive, because the ALJ had already found that there were no functional limitations from plaintiff's arm injury in his RFC analysis, which was supported by substantial evidence.

Next, the ALJ discounted plaintiff's credibility because his minimal medical treatment after 2010, due to his stated distrust of doctors, demonstrated that plaintiff did "not have any pressing medical issues" at the time of the 2014 hearing. (T. 21). Failure to seek treatment for allegedly disabling conditions is a valid consideration when assessing a plaintiff's credibility. *See Navan v. Astrue,* 303 F. App'x 18, 20 (2d. Cir. 2008) (citing *Arnone v. Bowen*, 882 F.2d 34, 39 (2d. Cir. 1989)). Plaintiff argues that the ALJ did not fully appreciate the legitimacy of his concerns with the medical profession, particularly with regard to the over-prescription of pain medication. (Pl.'s Br. at 14). However, this court finds that the ALJ's conclusion was a reasonable one, particularly in light of the lack of *any* identifiable physical limitations during plaintiff's most recent medical examinations: the April 23, 2010 consultative examination and a

June 2013 hospital visit.[5] (T. 557, 619).

Finally, the ALJ discounted plaintiff's credibility because the clinical findings did not support his testimony regarding his physical and mental functional limitations. (T. 21).  This court has previously discussed the medical evidence, particularly the findings of consultative examiners Dr. Ganesh and Dr. Shapiro, that provided substantial evidence for the RFC determination.  The same records provide substantial evidence for the ALJ's credibility determination.

## VIII. <u>STEP FIVE</u>

### A.    **Legal Standards**

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform.  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  "Work which exists in the national economy" means work existing in significant numbers "either in the region where the individuals live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*, No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR 82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed).  This definition emphasizes "that . . . a type[] of job which exists only in very limited numbers or in relatively few geographic locations may not be said to 'exist in the national economy.'" *Id.*  However, what constitutes a "significant" number is "fairly minimal." *Id.* (quoting *Fox v. Comm'r of Soc. Sec.*, No. 6:02-CV-1160, 2009 WL

---

[5] Plaintiff was treated on June 23, 2013 after exposure to a communicable disease.  The treatment notes from this visit reflect that plaintiff was in no acute distress, and plaintiff advised the examining physician that he felt "great." (T. 619-27).

367628, at *20 (N.D.N.Y. Feb. 13, 2009)).

In the ordinary case, the ALJ carries out this fifth step of the sequential disability analysis by applying the applicable Medical-Vocational Guidelines ("the Grids"). *Id.* The Grids divide work into sedentary, light, medium, heavy, and very heavy categories, based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull. 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2 (S.D.N.Y. 1996). *See also* 20 C.F.R. §§ 404.1567 & 416.967. Each exertional category of work has its own Grid, which then takes into account the plaintiff's age, education, and previous work experience. *Id.* Based on these factors, the Grids help the ALJ determine whether plaintiff can engage in any other substantial work that exists in the national economy. *Id.*

"Although the grids are 'generally dispositive, exclusive reliance on [them] is inappropriate' when they do not fully account for the claimant's limitations." *Martin v. Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted). When significant nonexertional impairments[6] are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a

---

[6] A "nonexertional" limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands. 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Although the ALJ is initially responsible for determining the claimant's capabilities based on all the evidence, *see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations. *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009). Where the hypothetical is based on an ALJ's RFC analysis, which is supported by substantial facts, the hypothetical is proper. *Id*. at 276-277.

### B.    Application

Plaintiff argues that the ALJ erred at step five because the RFC determination did not mirror any of the hypothetical questions answered by the VE at the February 21, 2014 hearing. (Pl.'s Br. at 10). He also argues that the VE did not identify "unskilled" jobs that existed in significant numbers in the national economy that plaintiff was able to perform. (Pl.'s Br. at 11-13). Neither argument merits remand.

Although a VE testified at the hearing, the ALJ ultimately relied on the Grids to determine that there were jobs that existed in significant numbers in the national economy that plaintiff could perform. (T. 22). In light of the ALJ's finding that

plaintiff's "additional limitations have little or no effect on the occupational base," based upon an RFC that was supported by substantial evidence as described above, such use of the Grids was permissible. *See Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009) (ALJ's reliance on Grids to determine disability status was not error, even though VE had testified at hearing). In addition, because the ALJ concluded from the Grids that plaintiff was not disabled, he was not required to identify specific jobs that plaintiff was capable of performing. *See Calabrese*, 358 F. App'x at 276 (citing *Heckler v. Campbell*, 461 U.S. 458, 470 (1983) (holding that the Commissioner need not provide "evidence of specific available jobs" that plaintiff could perform when relying on the Grids)).

The ALJ made clear in his decision that he was not relying on the VE testimony for the determination of disability. (T. 23). He summarized that testimony, and the representative jobs offered by the VE, "merely to show that a finding of 'not disabled' would still be directed even if plaintiff's testimony [regarding the scope of his disability] were taken as true." (*Id*.). Accordingly, this extraneous analysis did not impact the ALJ's determination of disability, and the court does not need to examine its validity.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and plaintiff's complaint be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk

of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:      September 12, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge